**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 05-cv-01396-REB

LUKE P., by and through his parents and next friends, JEFF and JULIE P.,

    Plaintiffs,

v.

THOMPSON R2-J SCHOOL DISTRICT,

    Defendant.

_____

**ORDER**

**Blackburn, J.**

This matter is before me on the following motions: 1) the defendant's **Motion to Dismiss** [#10], filed August 22, 2005; and 2) the plaintiffs' **Motion for Mandatory Preliminary Injunction** [#2], filed July 25, 2005. Both motions are briefed fully. I conclude that the motion to dismiss should be denied, and the motion for preliminary injunction should be granted.

**I. JURISDICTION**

The plaintiffs' claim is brought under § 1415 of the Individuals with Disabilities Education Act (IDEA). 20 U.S.C. §§ 1400 to 1482. Under 20 U.S.C. § 1415(i)(3), I have jurisdiction over claims brought under § 1415.

**II. FACTS AND PROCEDURAL HISTORY**

Plaintiff, Luke P., is a child with autism and mental retardation. Luke is eligible for special education and related services under the IDEA. Under the IDEA, public schools must provide students with disabilities a "free appropriate public education," or

FAPE. An individualized education plan, or IEP, is the mechanism through which a FAPE is provided. ***O'Toole v. Olathe Unified School Dist. No. 233***, 144 F.3d 692, 698 (10th Cir. 1998). A school district meets its IDEA obligations when it produces an IEP that provides the student with access to specialized instruction and related services that are individually designed to provide educational benefit to the child. ***Board of Educ. v.Rowley***, 458 U.S. 176, 201 (1982). In addition, the IDEA requires that children with disabilities be educated with non-disabled peers to the maximum extent appropriate. Children with disabilities may be removed to a more restrictive setting only when the child's disability is such that he cannot be served in the less restrictive setting, even with the use of supplementary aids and services. 20 U.S.C. § 1412(a)(5)(A).   On December 16, 2003, an Individualized Education Program (IEP) meeting was held to develop and IEP for Luke. Luke's parents attended the meeting and discussed their concerns about the program proposed by the School District. *Complaint*, ¶ 8. At about the same time, Luke's parents applied to the Boston Higashi School, a residential treatment facility in Boston, Massachusetts. The Higashi School is a specialized school with a student body composed entirely of students with autism. The annual tuition is approximately $137,000 per year. Luke was enrolled at the Higashi School on January 12, 2004.

The School District completed the development of an IEP for Luke, and the P.s commenced an administrative action challenging the sufficiency of the IEP, contending that the IEP failed to provide Luke with a FAPE because it did not include a residential placement. *Motion to Dismiss*, Ex. 1 (Request for Due Process Hearing). The P.s sought reimbursement from the School District for the tuition paid to the Boston Higashi

2

School.  A hearing was conducted by an independent hearing officer (IHO), under the system created under the regulations of the Colorado Department of Education.  1 C.C.R. 301-8 § 2220-R-6.03.

> The IHO found that the School District's IEP
>
> certainly addresses the substantive aspects of L.P.'s autism, his social and communicative problems, and his mental retardation. The IEP demonstrates a monumental and genuine effort on the part of the school district to improve L.P.'s performance in a number of areas affected by his autism including gross motor skills, communication, fine motor skills, self care skills, and academic skills in vocabulary and math.

*Complaint*, Exhibit 1 (Impartial Hearing Officer's Findings and Decision), p. 19. However, for reasons outlined in his findings and decision, the IHO concluded that the School District's "December 16, 2003, IEP did not offer L.P. a free appropriate public education."  *Complaint*, Exhibit 1, p. 14.

The IHO directed the School District to pay the cost of Luke's placement at the Boston Higashi School until Luke's placement is changed pursuant to law.  The IHO expressly found however, that there was not sufficient evidence in the record to determine the amount of the costs.  *Id.*, p. 25.   The School District timely appealed.  A state administrative law judge has set a briefing schedule, and oral argument was set for September 9, 2005. *Motion to Dismiss*, Exhibit 6.  The P.s now ask this court to order the School District to pay for the costs of Luke's placement at Boston Higashi through all administrative and judicial proceedings concerning their challenge to the School District's IEP.

### III.  IDEA

The IDEA contemplates a three tier review process when there is a dispute about the programming or placement for a child with disabilities.  The first step provides for a hearing by an impartial hearing officer (IHO).

> Whenever a complaint has been received under subsection (b)(6) or (k) of this section, the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.

20 U.S.C.A. § 1415(f)(1)(A).  Under the IDEA, the "State" is, in this case, the State of Colorado.  20 U.S.C. § 1401(31).  A "'State educational agency' means the State board of education or other agency or officer primarily responsible for State supervision of public elementary schools and secondary schools. . . ."  § 1401(32).

The IDEA authorizes a second level of review after the first due process hearing.

> If the hearing required by subsection (f) of this section is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency.

20 U.S.C.A. § 1415(g)(1).  The third step, set forth in subsection (i), provides in pertinent part:

> Any party aggrieved by the findings and decision made under subsection (f) . . . of this section who does not have the right of appeal under subsection (g) of this section . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section . . . in a district court of the United States.

20 U.S.C. § 1415(i)(2)(A).

The IDEA includes a provision sometimes called the "stay put" provision.  This provision provides, in relevant part:

4

> (D)uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . .

20 U.S.C.A. § 1415(j).  A related regulation provides further detail to this procedure.

> (a) Except as provided in § 300.526, during the pendency of any administrative or judicial proceeding . . .unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement.
>
> \* \* \* \*
>
> (c) If the decision of a hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State or local agency and the parents for purposes of paragraph (a) of this section.

34 C.F.R. § 300.514.

The plaintiffs argue that under § 300.514(a) and(c), the Boston Higashi School is Luke's current educational placement because the IHO agreed with Luke's parents that the Higashi School is the appropriate placement for Luke.  Under applicable law, the plaintiffs argue, the IHO's decision was a decision by a SEA or State review official.  The school district, therefore, is required to pay for the cost of Luke's current educational placement pending resolution of the School District's administrative appeal, and any subsequent lawsuit.  The plaintiffs assert that this obligation should be enforced by a preliminary injunction.

The School District argues that the IHO's decision was not a "decision of a hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal," as required under § 300.514.  Absent a decision by a SEA or a State review officials, the School District argues, the stay-put provision of the IDEA, and the obligation of the School District to pay the cost of Luke's current

educational placement, are not yet effective.  The School District argues that a decision by a decision by a SEA or State review official will not occur until the state administrative law judge makes a decision in Luke's case.

The IHO's decision in Luke's case is a decision by a SEA or State review official, for the purposes of the IDEA's stay-put provision.  20 U.S.C.A. § 1415(j); 34 C.F.R. § 300.514(a) and(c).  When the plaintiffs appealed the School District's decision concerning Luke's IEP, the School District was required to contact the Colorado Department of Education (DOE) to obtain the names of three available hearing officers. 1 Colo. Code Regs. § 301-8 § 2220-R 6.03(3)(b)(i),(ii) (hereafter § 6.03).  The state regulations which control this procedure were adopted under the Exceptional Children's Educational Act, §§22-20-101 to 22-20-116, C.R.S. (ECEA).  The ECEA is Colorado's analog to the IDEA.  The district and Luke's parents then each were entitled to eliminate one of the three hearing officers, and the remaining hearing officer would hear the dispute.  § 6.03(3)(b)(iv),(v).  The DOE trains hearing officers, and maintains a registry of qualified hearing officers.  § 6.03(7).  The caption of the IHO's written decision indicates that the hearing in Luke's case was conducted by the Colorado Department of Education, Special Education Services Unit.  *Complaint*, Exhibit 3, p. 1. The applicable Colorado regulation provides that "(i)f the decision of a hearing officer in a due process hearing . . . agrees with the child's parents that a change of placement is appropriate, that placement shall be treated as an agreement between the administrative unit (school district) and the parents" for the purpose of determining the child's current educational placement.  § 6.03(14)(b).

These circumstances are quite similar to the circumstances examined in ***T.H. v. Board of Educ. of Palatine Community Consol. School Dist.15***, 55 F.Supp.2d 830, 845 (N.D. Ill.1999).  In ***T.H.***, a request for the first due process hearing involving a challenge to an IEP was forwarded to the State Superintendent, and the State Board of Education provided a list of five prospective hearing officers.  55 F. Supp.2d 845.  The state recruited, trained, and paid the hearing officers.  ***Id***.  Given this scheme, the court concluded that the first due process hearing was a state level decision for the purpose of the IDEA's stay-put provision.  ***Id***.  The court concluded also that the system created by Illinois law which, like Colorado, provided hearings at two levels, provided two state level hearings.  ***Id***.

The Colorado scheme is quite similar.  When the parents and the school district cannot resolve their dispute about a proper placement, the Colorado Department of Education must be contacted, and the DOE must provide a hearing officer to hear the dispute.  The applicable regulations impose a variety of state imposed requirements on these proceedings, and the resulting decision is a decision made by a hearing officer who is trained, selected, and regulated by the DOE.  The IHO's decision is a decision by a state educational agency.  The School District argues that the IHO's decision is a local decision, a decision by the school district, which does not trigger the stay-put provision of the IDEA.  The cases cited by the School District in support of this proposition all involve circumstances that differ materially from the circumstances of this case.

Under § 1415(j), the Boston Higashi School became Luke's current educational placement when the IHO issued his decision in Luke's case on July 8, 2004.  The

7

IDEA's stay-put mandate became effective on that date. The stay-put mandate includes a mandate that the School District pay the cost of Luke's current educational placement pending the resolution of administrative and court review of the parties' claims under § 1415. *See, e.g., Murphy v. Arlington Cent. School Dist. Bd. of Educ.*, 297 F.3d 195, 200 -201 (2nd Cir. 2002); *Susquenita School Dist. v. Raelee S. By and Through Heidi S.*, 96 F.3d 78, 85 (3rd Cir. 1996) (policies underlying IDEA favor imposing financial responsibility on local school district as soon as there has been an administrative panel or judicial decision establishing pendent placement).

The School District argues that treating the IHO's decision as anything other than a decision of the School District's board would violate the Colorado Constitution. The Colorado Constitution vests constitutional responsibility for "control of instruction" in local boards of education. Colo. Const. Art. IX, § 15. In essence, the School District argues that the School District will be deprived of its constitutionally granted decision making authority if the IHO's decision is viewed as a state level decision. I disagree.

In *Board of Educ. of School Dist. No. 1 in City and County of Denver v. Booth*, the Colorado Supreme Court examined the constitutional decision making authority of local school boards. 984 P.2d 639, 649 (Colo. 1999). The *Booth* court recognized two general principles that are instructive here: 1) "(L)ocal board discretion can be restricted or limited in [some] circumstances by statutory criteria and/or judicial review"; and 2) "[S]tatutory or judicial constraints, if they exist, must not have the effect of usurping the local board's decision-making authority or its ability to implement, guide, or manage the educational programs for which it is ultimately responsible." *Id*.

Section 22-20-108(1) of Colorado's ECEA provides that "determinations about a child's individual educational program shall be made by a committee of professionally qualified personnel designated by the board of education of the school district . . . ." In this case, the School District developed an IEP for Luke, presumably following this statutory requirement. This constitutes the School District's exercise of its decision-making authority. Once the School District's board has made a decision, it is proper for state authorities to determine whether the board's decision complies with the requirements of the ECEA and IDEA. That is what the IHO did in Luke's case, and what the state ALJ will do in reviewing the IHO's decision. These procedures do not usurp the board's initial decision-making authority.

In short, the IHO's decision in Luke's case was a decision by a SEA or State review official. When the IHO made his decision, the Boston Higashi School became Luke's current educational placement under the IDEA. The school district, therefore, is required to pay for the cost of Luke's current educational placement pending resolution of the School District's administrative appeal, and any subsequent lawsuit, or until the current educational placement is changed pursuant to law.

## IV.  MOTION TO DISMISS

The School District moves to dismiss this case under FED. R. CIV. P. 12(b)(1). The School District argues that this court lacks subject matter jurisdiction over this case because the plaintiffs have not exhausted their administrative remedies. The United States Court of Appeals for the Tenth Circuit has held that a plaintiff seeking relief under the IDEA must exhaust available administrative remedies before filing suit. ***Urban by Urban v. Jefferson County School Dist. R-1***, 89 F.3d 720, 724-25 (10th Cir.

1996). Exhaustion is not required, however, when administrative remedies would be futile, when they would fail to provide relief, or when an agency has adopted a policy or pursued a practice of generally applicability that is contrary to the law. *Id*. at 724.

The only relief sought by the plaintiffs is an injunction requiring the School District to pay the cost of maintaining Luke's placement at the Higashi School from the date of the IHO's decision, July 8, 2005, and for as long as the Boston Higashi School remains Luke's current educational placement. The plaintiffs seek also an award of attorney fees and costs. The plaintiffs argue that the IDEA requires the School District to pay the cost of Luke's current educational placement while the district and the plaintiffs pursue the available administrative remedies. They argue that they are not required to exhaust administrative remedies in order to seek relief available to them under the IDEA while administrative remedies are being completed. I agree. The administrative process will not provide the primary relief the plaintiffs seek, payment by the school district pending completion of administrative and court review of their § 1415 claim. Exhaustion is not required when the administrative process will not provide the relief sought. **Honig v. Doe**, 484 U.S. 305, 326-27 (1988); **Urban**, 89 F.3d at 724. The exhaustion requirement is not applicable to this case, and this court has subject matter jurisdiction over the plaintiffs' Complaint.

## V. PRELIMINARY INJUNCTION

Some courts have concluded that the IDEA's "stay put" provision imposes an automatic injunction requiring that the student remain in his or her current educational placement pending the resolution of administrative or judicial proceedings. ***See, e.g., J.O. ex rel. C.O. v. Orange Tp. Bd. of Educ.***, 287 F.3d 267, 272 (3rd Cir. 2002)

10

(§ 1415 (j) stay-put order functions as an automatic preliminary injunction)(quotation and citation omitted); **Board of Educ. of Community High School Dist. No. 218, Cook County, Ill. v. Illinois State Bd. of Educ.**, 103 F.3d 545, 550 (7th Cir. 1996) (importation of Rule 65 equitable factors into enforcement of IDEA stay-put provision dilutes statutory mandate of uninterrupted education during contest between school board and parents); **Doe by Gonzales v. Maher**, 793 F.2d 1470, 1486 (9th Cir. 1986) (stay-put provision operates as an automatic injunction; interpreting predecessor provision in EAHCA). However, such an injunction is not absolute. **Honig v. Doe**, 484 U.S. at 326 (court may order removal of student from then current educational placement under appropriate circumstances).

The Tenth Circuit has not addressed the question of whether the stay-put provision of § 1415 (j) constitutes an automatic injunction. I agree with the courts that have concluded that the stay-put provision of the IDEA creates an automatic, statutory injunction. Otherwise, the mandate of the statute often could be evaded, and the mandate would be meaningless. Given the facts reflected in the record of this case, I conclude that the plaintiffs are entitled to a preliminary injunction requiring the School District to comply with § 1415(j), including payment for the cost of Luke's current educational placement.

Absent binding authority on the question of whether the stay-put provision of the IDEA operates as an automatic injunction, I also will analyze the plaintiffs' motion for preliminary injunction under the standard preliminary inunction analysis. A preliminary injunction is extraordinary relief. A party seeking a preliminary injunction must show 1) a substantial likelihood that the movant eventually will prevail on the merits; 2) that the

11

movant will suffer irreparable injury unless the injunction issues; 3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party;  4) that the injunction, if issued, would not be adverse to the public interest.  ***Lundgrin v. Claytor***, 619 F.2d 61, 63 (10th Cir. 1980).

On the current record, I conclude that the plaintiffs are entitled to a preliminary injunction under the standard preliminary injunction analysis of Rule 65.  For the reasons outlined above, I conclude that the plaintiffs have a substantial likelihood of success on the merits of their claim under § 1415.  Absent an injunction, the plaintiffs will be deprived of their statutory right to payment by the school district of the cost of Luke's current educational placement pending administrative review and court review of this placement.  Deprivation of this right constitutes irreparable injury.  This threatened injury outweighs the damage the injunction will cause the school district. The harm potentially suffered by the school district is  the monetary cost of complying with the mandate of federal law.  Finally, an injunction requiring the School District to comply with the mandate of federal law cannot properly be seen as adverse to the public interest.

The plaintiffs seek an injunction requiring the School District to "fund the costs associated with Luke's placement at the Boston Higashi School as long as the Boston Higashi School remains Luke's current educational placement." *Motion for Mandatory Preliminary Injunction*, p. 4.  In addition, they seek payment from the School District of $15,905.16, "which represents the costs the Parents have incured in maintaining Luke's pendent placement at the Boston Higashi School from July 8, 2005 through August 12, 2005." *Id.*  The record contains little information about the costs associated

with maintaining Luke's placement, and whether those costs are reasonable. Given this paucity of relevant information, I will order the parties to submit brief supplemental memoranda addressing the issue of the specific amount of reimbursement that is appropriate, unless they can reach an agreement on the appropriate amount. **See Ash v. Lake Oswego School Dist. No. 7J**, 766 F.Supp. 852, 865 (D. Or. 1991).

## VI.  COSTS & ATTORNEY FEES

The plaintiffs seek an award of their costs and attorney fees for bringing their motion for preliminary injunction, under 20 U.S.C. § 1415(i)(3)(B). This section provides that the court may, in its discretion, award reasonable attorney fees as part of the costs awarded to a prevailing party. A preliminary injunction is, by definition, preliminary. The fact that the plaintiffs have obtained such interim relief does not make them prevailing parties in this case, and the award of such interim relief cannot buoy an award of attorney fees and costs. **See, e.g., Maine School Administrative Dist. No. 35 v. Mr. R.**, 321 F.3d 9, 15 (1st Cir. 2003); **John T. ex rel. Paul T. v. Delaware County Intermediate Unit**, 318 F.3d 545, 556 (3rd Cir. 2003).

## VII.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1) That the defendant's Motion to Dismiss [#10], filed August 22, 2005, is **DENIED**;

2) That the plaintiffs' Motion for Mandatory Preliminary Injunction [# 2], filed July 25, 2005, is **GRANTED**;

3) That under 20 U.S.C. § 1415(j), the defendant, Thompson R2-J School District, is **ORDERED** to pay the reasonable cost of maintaining plaintiff, Luke P.'s,

current educational placement at the Boston Higashi School so long as that school constitutes Luke's current educational placement;

4) That the defendant's payment obligation **SHALL INCLUDE** all reasonable costs associated with Luke's current educational placement at the Boston Higashi School arising on or after July 8, 2004, the date of the IHO's decision in Luke's case;

5) That the defendant's payment obligation **SHALL INCLUDE** reimbursement to Luke's parents of all reasonable costs, arising on or after July 8, 2004, the parents have paid to maintain Luke's current educational placement;

6) That on or before **December 9, 2005**, the parties shall file supplemental memoranda addressing the issue of the specific amount of reimbursement that is reasonable to maintain Luke's current educational placement at the Boston Higashi School; and

7) That if the parties earlier agree on appropriate reimbursement amounts, they **SHALL NOTIFY** the court of such agreement on or before December 9, 2005.

Dated November 18, 2005, at Denver, Colorado.

BY THE COURT:

s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge